UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LEROY BULLOCK** | * | **CIVIL ACTION NO. 13-1356** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Leroy Bullock protectively filed the instant application for Title II Disability Insurance Benefits on February 22, 2011. (Tr. 115-116, 137). He alleged disability as of January 1, 2011, because of heart problems, shortness of breath, and high blood pressure. (Tr. 131). The state agency denied the claims at the initial stage of the administrative process. (Tr. 45-56). Thereafter, Bullock requested and received a November 16, 2011, hearing before an Administrative Law Judge ("ALJ"). (Tr. 23-44). In a January 24, 2012, partially favorable decision, the ALJ awarded benefits with a disability onset date of January 1, 2012. (Tr. 9-19). However, the ALJ denied disability for the period from the alleged onset of disability through December 31, 2011, finding at step five of the sequential evaluation process that Bullock was

able to make an adjustment to other work that exists in significant numbers in the national economy. *Id*.

Bullock appealed the adverse portion of the decision to the Appeals Council. On April 4, 2013, however, the Appeals Council denied his request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On June 4, 2013, Bullock sought review before this court. He alleges, for multiple reasons, that that the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

    (5)       If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

**I.  Steps One, Two, and Three**

      The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 15). At step two, she found that, during the relevant period, he suffered severe impairments of chronic kidney disease, hypertension, and obesity. *Id*. She concluded, however, that these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 15-16).

**II.  Residual Functional Capacity**

      The ALJ next determined that Bullock retained the residual functional capacity ("RFC")

to perform the full range of light work. (Tr. 16).[1]

### III. Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Bullock was unable to perform his past relevant work. (Tr. 18). Accordingly, she proceeded to step five. At this step, the ALJ determined that Bullock was an individual closely approaching advanced age (54 years old), but that he subsequently changed categories to an individual of advanced age (55) on January 1, 2012. *Id*. He also had at least a high school education, with the ability to communicate in English. *Id*. Transferability of skills was immaterial prior to January 1, 2012. *Id*. The ALJ then observed that, given Bullock's vocational factors, and the ability to perform the full range of light work, the Medical-Vocational Guidelines directed a finding of *not disabled* prior to January 1, 2012. 20 C.F.R. § 404.1569; Rule 202.14, Table 2, Appendix 2, Subpart P, Regulations No. 4. *Id*. Beginning January 1, 2012, however, Bullock's age category changed, thus mandating a finding of *disabled* by direct application of Medical-Vocation Rule 202.06. (Tr. 18-19).

---

[1] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

**Analysis**

I.   **Residual Functional Capacity Assessment**

   a)   <u>Chronology of Relevant Medical Evidence</u>

The relatively sparse medical record reveals that Bullock was hospitalized from January 19-24, 2011, with hypertension and a two-week history of cocaine abuse. (Tr. 186-190). He was not taking any medications. *Id.* Bullock reported that he had a one pack per day cigarette habit for the past 35 years, he drank two pints of alcohol per day, and used cocaine off and on for the past ten years, with his most recent use one week prior to admission. *Id.* His blood pressure on arrival was 251/168. *Id.* He had no edema in his extremities, with full range of motion and motor function in all joints. *Id.* He tested positive for cocaine metabolite and opiates. *Id.* His discharge diagnoses included hypertensive emergency resolved; hypertension; cocaine abuse; and chest pain. *Id.*

On April 13, 2011, at the request of the state agency, Bullock was seen by David Hebert, M.D., for a consultative physical examination. (Tr. 200-203). Bullock's chief complaints were heart problems, shortness of breath, high blood pressure, and visual problems. *Id.* Bullock reported that he had severe arterial hypertension. *Id.* He stated that he experienced frequent chest pains that occurred almost daily and which lasted for about 30 seconds. *Id.* He could not perform activities for more than five minutes without becoming short of breath. *Id.* He stated that his blood pressure had been difficult to control as of late. *Id.* He reported frequent, daily, throbbing headaches, apparently caused by his hypertension. *Id.* There was no evidence of myocardial damage from his January 24, 2011, admission. *Id.* He reported that he had stopped using cocaine, on an indeterminate date. *Id.* Bullock also complained of blurred vision, dizziness, chronic cough, shortness of breath, wheezing, and low back pain. *Id.*

Upon examination, Bullock ambulated about the office with ease. *Id.*  His blood pressure was 180/120 in both arms even after quiet rest. *Id.*  His vision was 20/20, without corrective lenses. *Id.*  His gait and station were completely normal without any assistive devices. *Id*.  There was no deformity, swelling, or erythema of any joints; all peripheral joints exhibited a full range of motion. *Id.*  There were no motor or sensory deficits; motor strength was 5/5 in all areas; handgrip was 5/5 bilaterally. *Id.*  He was alert and oriented in all areas. *Id*.

Hebert diagnosed severe accelerated hypertension, poorly controlled at present; atypical chest pain, thought not to represent any type of cardiac disease; substance abuse with cocaine, believed to be ongoing; and severe arterial hypertension, which needed to be controlled.  Hebert opined that *if* Bullock's blood pressure were controlled, then there was no reason why he could not perform routine walking, sitting, standing, carrying, and lifting for an eight hour work day.  Mentally, he was amazingly alert, and quite functional. *Id.*  Although he did not have cardiac disease, he did have very serious accelerated hypertension and probable substance abuse difficulties. *Id.*

Several months later, Bullock was hospitalized from October 6-7, 2011, for complaints of dyspnea, headaches, cough, subjective fever, and poor appetite.  (Tr. 213).  He denied chest pain, shortness of breath, or dizziness. *Id.*  His blood pressure was 146/72. *Id.*  He was admitted with diagnosis of left, lower lobe pneumonia, hypertension, history of alcohol abuse, and history of cocaine abuse. *Id.*

A Family Practice Clinic record dated October 31, 2011, documented complaints of on and off again headaches, with runny nose for the past two days.  (Tr. 215).  Bullock reported that he was not adhering to dietary restrictions, and was consuming salt. *Id.*  He denied dizziness, loss of consciousness, chest pain, or shortness of breath. *Id.*  He reported that his last cocaine use

was ten months earlier.  *Id.*  His blood pressure was 196/113, manual pressure was 200/100.  *Id*. His hypertension was uncontrolled.  *Id.*  He was advised to maintain his low salt diet.  *Id*.

During a December 6, 2011, clinic visit, Bullock suffered a hypertensive emergency with a blood pressure reading of 210/125.  (Tr. 218).  It was noted that he had uncontrolled hypertension, and was non-compliant with his medication.  (Tr. 232).  Consequently, he was hospitalized from December 6-9, 2011, for blood pressure monitoring, with a diagnosis of uncontrolled hypertension.  *Id.*  (Tr. 209-211).  Upon examination, he exhibited a full range of motion, with no muscular atrophy.  *Id.*  He tested negative for drugs.  (Tr. 239, 246).

On December 12, 2011, Bullock was seen for followup for hypertension after his hospitalization.  (Tr. 208).  He had no complaint of chest pain, shortness of breath, or headache. (Tr. 208).  His hypertension was controlled.  *Id.*  However, Bullock expressed concern regarding the cost of his medication.  *Id*.

b)   Discussion

In this case, the sole examining physician to have offered an opinion regarding the effects of plaintiff's impairments was the consultative physician, Dr. Hebert.  In his report, as he is wont to do, Dr. Hebert included his rote opinion that he envisioned no reason why Bullock could not perform routine walking, sitting, standing, carrying, and lifting for an eight hour work day.  On other occasions, this court has struggled to translate this refrain into a corresponding exertional level.  Here, the ALJ purported to assign "considerable weight" to Dr. Hebert's assessment, but then proceeded to observe that "the more recent medical evidence shows that the claimant's chronic kidney disease may not be fully controlled with medications, and [when] the combined effects of the claimant's obesity is considered."  (Tr. 18).  In other words, the ALJ's opinion suggests that she interpreted Dr. Hebert's opinion as supporting an RFC for work beyond the

light exertional level, because she then reduced Bullock's RFC to give effect to more recent medical evidence.

In this particular case, and given the interpretive assistance provided by the non-examining physician,[2] the undersigned has no qualms about reading Dr. Hebert's cryptic assessment as supporting an RFC for at least light work. The rub here, however, is that Hebert qualified his opinion by making it contingent on Bullock's gaining control of his blood pressure – a condition that Hebert observed was but poorly controlled at the time of his examination, and which the ALJ found was no more than partially controlled throughout the relevant period. (Tr. 202, 17). In other words, Dr. Hebert's relatively benign assessment assumed that Bullock would be able to control his hypertension – an assumption that the ALJ determined never came to pass.

Because the ALJ's additional findings effectively undermined the efficacy of Dr. Hebert's opinion (and the opinion of the non-examining agency physician which was premised on same), the record otherwise remains devoid of substantial evidence to support the ALJ's now-autonomously derived RFC. The court emphasizes that the lack of a valid medical source statement describing the work-related activities that the claimant is still capable of performing does not, in, and of itself, render the record incomplete. *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995). In *Ripley*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley, supra*. The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles. *Id.* However, without reports from qualified medical experts, the Fifth Circuit could

---

[2] Although not mentioned by the ALJ, non-examining agency physician, Johnny Craig, M.D., reviewed the then-available record and Dr. Hebert's report, but opined on April 29, 2011, that Bullock's impairments were non-severe. (Tr. 49). Like Dr. Hebert, however, Dr. Craig did not have the benefit of the subsequent medical records.

not conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*. The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment. *Id*.

The instant case is materially indistinguishable from *Ripley, supra*. The record is devoid of a valid medical source statement that supports the ALJ's RFC. Moreover, plaintiff's own testimony does not support the ALJ's residual functional capacity assessment. (Tr. 31-35). Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

**II.    Step Five and Remand**

Because the foundation for the ALJ's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, for the period at issue, also is not supported by substantial evidence.

**Conclusion**

For the above-stated reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.[3]

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 8th day of July 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[3] The court need not consider plaintiff's additional arguments. These issues may be addressed upon remand.